Filed 10/8/13  P. v. Kueny CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TIFFANY KUENY,<br><br>    Defendant and Appellant. | D062506<br><br><br><br>(Super. Ct. No. SCD240930) |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa Foster, Judge.  Affirmed as modified.

Thomas E. Robertson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, although the victim of domestic violence testified at the defendant's

preliminary hearing and was served a trial subpoena, the victim did not appear at trial. We find no error in the trial court's admission of the victim's preliminary hearing testimony. The record amply supports the trial court's determination the victim was unavailable as a witness.

With a modification suggested by the Attorney General, we also affirm a 10-year restraining order imposed on the defendant.

FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2012, defendant and appellant Tiffany Kueny and Gary Mark were dating and had been engaged to be married. However, their relationship was volatile and, during their arguments, Kueny destroyed property in Mark's home.

On the morning of May 18, 2012, Kueny and Mark were arguing in Mark's bedroom. During the argument, while Mark was lying on his bed, Kueny hit Mark's head, shoulder and arm with a metal flute. Mark defended himself by breaking the flute and hitting Kueny with the portion he had in his hand; the two then fell off the bed onto the floor. While they were on the floor, Kueny bit Mark's arm. Mark freed himself and was treated at a hospital that day for multiple injuries including a bite wound, a cut thumb, a cut finger and a hematoma on the right side of his head.

After Mark freed himself, Kueny destroyed a good deal of property in Mark's bedroom. Kueny was arrested on May 19, 2012, and charged with one count of inflicting corporal injury on a cohabitant. (Pen. Code,[1] § 273.5, subd. (a).) The complaint also

_____

[1]    All further statutory references are to the Penal Code.

2

alleged that within the previous seven years Kueny had been convicted of a prior violation of section 273.5, subdivision (a).

A preliminary hearing was conducted on June 6, 2012. Mark testified at the hearing about the attack he suffered, and Kueny was bound over for a trial, which was set for July 26, 2012.

Between July 9, 2012 and July 22, 2012, a process server retained by the district attorney's office attempted to serve Mark with a subpoena on five or six occasions but was unable to do so. On July 23, 2012, Mark left a voicemail message with a paralegal from the district attorney's office in which he stated that he did not want to testify at trial and that because of a death in his family, he would be out of town during the trial.

On July 24, 2012, a district attorney's investigator was able to locate and serve Mark with a subpoena. After Mark was served with the subpoena, he called the district attorney's paralegal; he was very rude to her and stated that he was not going to appear and that the district attorney would have to get a warrant.

On the first day of trial, July 26, 2012, the trial court issued a bench warrant to compel Mark's appearance but withheld execution of the warrant until July 30, 2012. After the bench warrant was issued but before the district attorney's office attempted to execute it, a deputy district attorney left a detailed voicemail message for Mark in which, among other matters, he informed Mark that a bench warrant had been issued and asked Mark to contact him. Mark did not respond to the deputy district attorney's message.

On July 30, the district attorney's investigator attempted to execute the warrant,

3

but he was unable to locate Mark and reported that all three telephone numbers he had for Mark had been disconnected.

In response to the prosecution's motion to introduce Mark's preliminary hearing testimony, the trial court conducted an evidentiary hearing and determined Mark was unavailable as a witness and Kueny had been given an ample opportunity to cross-examine Mark at the preliminary hearing. Accordingly, the trial court granted the prosecution's motion.

The jury found Kueny guilty, and the trial court found true the allegation of a prior section 273.5, subdivision (a) conviction. Kueny was sentenced to one year of local custody and three years of formal probation. In addition, the trial court issued a restraining order which prohibited Kueny from having any contact with Mark for 10 years.

I

The principal issue Kueny raises on appeal is her contention the trial court erred in finding Mark was unavailable as a witness and admitting Mark's preliminary hearing testimony. We find no error.

A. *Legal Principles*

In a criminal trial, the confrontation clauses of both the federal and state Constitutions (U.S. Const., 6th Amend.; Cal. Const., art I, § 15) and Evidence Code section 1291, subdivision (a)(2), permit the prosecution to present a witness's prior testimony for its truth if the defendant had an opportunity to cross-examine the witness in

4

the prior proceeding and the witness is unavailable.  (*People v. Herrera* (2010) 49 Cal.4th 613, 620-622 (*Herrera*).)  A witness is unavailable when, notwithstanding its exercise of reasonable diligence, the prosecution is unable to obtain the witness's presence at the trial.  (*Herrera*, at pp. 621-622; Evid. Code, § 240, subd. (a)(5).)

With respect to the steps a prosecutor must take to obtain the testimony of an unwilling witness, the law does not require any specific action but rather a consistent and good faith effort:  "An appellate court 'will not reverse a trial court's determination [under § 240] simply because the defendant can conceive of some further step or avenue left unexplored by the prosecution.  Where the record reveals, . . . that sustained and substantial good faith efforts were undertaken, the defendant's ability to suggest additional steps (usually, as here, with the benefit of hindsight) does not automatically render the prosecution's efforts "unreasonable."  [Citations.]  The law requires only reasonable efforts, not prescient perfection.'  [Citations.]  'That additional efforts might have been made or other lines of inquiry pursued does not affect [a] conclusion [there was due diligence] . . . .  It is enough that the People used reasonable efforts to locate the witness.'  [Citation.]  A court cannot 'properly impose upon the People an obligation to keep "periodic tabs" on every material witness in a criminal case, for the administrative burdens of doing so would be prohibitive.  Moreover, it is unclear what effective and reasonable controls the People could impose upon a witness who plans to leave the state, or simply "disappear," long before a trial date is set.'  [Citation.]"  (*People v. Diaz* (2002) 95 Cal.App.4th 695, 706 (*Diaz*).)

"We review the trial court's resolution of disputed factual issues under the deferential substantial evidence standard [citation], and independently review whether the facts demonstrate prosecutorial good faith and due diligence." (*Herrera*, *supra*, 49 Cal.4th at p. 623.)

As here, in *Diaz*, the court considered a district attorney's efforts to obtain testimony from a recalcitrant witness. The defendant in *Diaz* was a gang member charged with the attempted murder of a member of a rival gang. At the scene of the shooting, the victim's girlfriend identified the defendant to investigators. However, by the time of the preliminary hearing, the victim's girlfriend was unwilling to testify and a district attorney's investigator was only able to obtain her appearance at the preliminary hearing by way of a ruse. At the preliminary hearing, the girlfriend refused to identify the defendant as the shooter and disavowed the statements she had made at the scene of the shooting.

Following the preliminary hearing, the district attorney's office did not promptly subpoena the victim's girlfriend because the district attorney's investigator believed that serving the subpoena well in advance of the trial would only ensure that the girlfriend was unavailable at trial. Rather, the investigator, who was experienced in gang cases, monitored the girlfriend's whereabouts on a weekly basis and planned to serve her with a subpoena when he went to pick her up to take her to trial. The investigator's plan was unsuccessful; he and another colleague were unable to locate the girlfriend at the time of trial.

In finding the prosecution had made a reasonable effort to obtain the girlfriend's testimony, the court in *Diaz* stated: "[W]e agree with the trial court's conclusion that, 'given the particular circumstances of this case, . . . the witness is actually making a calculated effort to avoid service of process. And therefore, the detective's decision to-- how he decided to serve the subpoena, if he could have, certainly appears reasonable under the circumstances, given his personal knowledge of the witness. [¶] So, given my best judgment and reasoning, . . . under the totality of the circumstances, it does appear . . . that due diligence has been made.'" (*Diaz*, *supra*, 95 Cal.App.4th at p. 707.)

B. *Analysis*

*Diaz* is an apt illustration of both the principle that we must review each case in light of the particular circumstances presented and the related principle that, although the prosecution is required to use reasonable diligence in securing the presence of its witnesses at trial, the prosecution is not required to exhaust all conceivable means of obtaining a witness's testimony as a condition of offering the witness's prior testimony.

Here, the district attorney's approach to obtaining Mark's trial testimony was reasonable given the circumstances presented. We note Mark voluntarily appeared at the preliminary hearing and had no apparent difficulty testifying against Kueny at that stage of the proceedings. We also note that Mark was an attorney admitted to the bar here in California and therefore presumably more sensitive than a lay person to the impact of defying a subpoena. Thus, when, after the preliminary hearing Mark proved difficult to locate and expressed his unwillingness to testify, his earlier cooperation and status as a

7

lawyer supported the district attorney's office's apparent belief that, while additional measures were required to secure his attendance, once Mark was served with a subpoena, he would comply. These circumstances also supported the trial court's decision to issue a bench warrant on the first day of trial but hold execution of it to give the prosecution an opportunity to obtain Mark's compliance.

Like the trial court, given this record, we have no difficulty concluding the district attorney's office used reasonable diligence in attempting to obtain Mark's testimony at trial and that, when the district attorney's office was unable to execute the trial court's bench warrant, Mark was unavailable as a witness for confrontation clause purposes as well as under Evidence Code section 240.

## II

Next, Kueny contends the trial court abused its discretion in imposing on her a restraining order that prevents her from having any contact with Mark for a period of 10 years. She argues the order is too broad both in its substantive scope and in its duration. We accept the Attorney General's suggestion that we modify the order to make it consistent with the intent expressed by the trial court at the time of sentencing and, as modified, we affirm the order.

When sentencing a defendant convicted of violating section 273.5, subdivision (a), section 273.5, subdivision (i) permits a trial court to impose a restraining order for up to 10 years. Section 273.5, subdivision (i) provides in pertinent part: "It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the

8

facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family."

Here, the trial court imposed a 10-year restraining order which directed Kueny in the following terms: "Do not knowingly contact or attempt to contact, annoy, or molest, either directly or indirectly[,] Gary Mark." In imposing the restraining order, the trial court noted that Kueny and Mark were in an unhealthy relationship, which was characterized by repeated acts of violence committed by each of them. The court stated: "I don't want the two of you together anymore. It's not safe for either of you, and it's not safe for society."

In explaining what its order required, the trial court stated: "The protected party is Gary Mark, and what that means, Ms. Kueny, is you are not to have any contact with Mr. Mark at all, not by phone, not by mail. I appreciate you can't control him, but it means *you can't initiate any contact with him.* You have to stay 100 yards away from him. You can't strike him, harass him, et cetera." (Italics added.)

On appeal, Kueny contends the order is overly broad because she believes it covers contact initiated by Mark. The trial court's statements at the time of sentencing make it clear that it only intended to restrain contact Kueny initiates. The Attorney General suggests that we may resolve any doubt as to the scope of the order by modifying it to state: "Defendant is not to knowingly initiate any contact with the victim, Gary Mark, for a period of 10 years." Kueny agrees this modification would remedy her objection as to the scope of the order. Accordingly, we accept the Attorney General's

9

suggestion.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 892.)

Kueny also argues the 10-year term of the restraining order is excessive.  We find no abuse of discretion.  As the trial court indicated, Kueny and Mark had a volatile and violent relationship.  We also note Kueny not only had previously been convicted of violating section 273.5, subdivision (a), but she had a lengthy criminal history that included separate convictions during the 10 years before this offense for driving under the influence, disturbing the peace, battery on a spouse, trespass/refusing to leave property, violating a temporary restraining order, and fighting in public.  Given the nature of her relationship with Mark, and her own record of violent criminal acts, the trial court was fully warranted in imposing the full 10-year term permitted by the statute.

III

The trial court ordered that Kueny cooperate with her probation officer in determining whether she had the ability to repay the county for the cost of its presentence investigation and/or the costs of her probation supervision.  The court set the cost of the presentence investigation at $1,127 and probation supervision at $99 a month.  The trial court further directed that Kueny be liable for those amounts *if* the probation department determined she had the ability to pay them and subject to her right to challenge the department's determination.

In light of the conditional nature of the payments required by the trial court and, in particular, Kueny's right to challenge any determination that she has the ability to make the payments, the trial court did not impose those costs without regard to her ability to

10

pay them. (See § 1203.1b, subds. (a) & (b).) Thus, contrary to her argument on appeal, the trial court's order conformed with the requirements of section 1203.1b, subdivisions (a) and (b), which require that the probation department determine a defendant's ability to pay probation costs, subject to the right of the defendant to have her ability to pay the costs determined by the trial court.

## DISPOSITION

The restraining order imposed by the trial court is modified to provide as follows: "Defendant is not to knowingly initiate any contact with the victim, Gary Mark, for a period of 10 years." As modified, the judgment of conviction is affirmed.


BENKE, Acting P. J.

WE CONCUR:


McINTYRE, J.


O'ROURKE, J.


11